## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| SHERYL D. CLINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION FILE |
| ADVANCED NEUROMODULATION | ) | NO. 1:11-CV-04064-AT |
| SYSTEMS, INC., d/b/a ST. JUDE | ) | |
| MEDICAL NEUROMODULATION | ) | |
| DIVISION, | ) | |
| | ) | |
| Defendant. | ) | |

## DEFENDANT ADVANCED NEUROMODULATION SYSTEMS, INC., d/b/a ST. JUDE MEDICAL NEUROMODULATION DIVISION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE

COMES NOW, Advanced Neuromodulation Systems, Inc., d/b/a St. Jude Medical Neuromodulation Division ("SJN"), a Defendant in the above-styled civil action, and shows this Court that Plaintiff's Third Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). The central issue before this Court is whether Plaintiff's Third Amended Complaint escapes express and implied preemption, and it does not. Despite having had the opportunity to conduct discovery, the Third Amended Complaint still fails to sufficiently plead the necessary elements of a parallel claim to avoid express preemption by 21 U.S.C. §

360k.  The "see-what-sticks" strategy employed by Plaintiff creates only a facade of an adequately pled parallel claim when, in actuality, no viable parallel claim is pled.   Furthermore, Plaintiff's claims also fail to survive implied preemption because they attempt to enforce federal regulations in contravention of 21 U.S.C. § 337(a) and *Buckman Co. v. Pls.' Legal Cmte.,* 531 U.S. 341 (2001).   Because preemption applies, the Third Amended Complaint must be dismissed and with prejudice in light of her repeated failures to cure these deficiencies and the futility in permitting yet another Amended Complaint.[1]

## I.   <u>INTRODUCTION</u>

This case arises out of Plaintiff's use of a spinal cord stimulator known as the Eon™ Mini Neurostimulation System.  (Pl.'s Third Am. Compl. ¶¶ 3-4.)  The Eon™ Mini Neurostimulation System includes an Implantable Pulse Generator ("IPG"), leads that connect to the IPG, a charger, and a programmer.  *Id.* ¶ 92, Ex. 18.  The FDA granted premarket approval ("PMA") in 2001 for SJN's original spinal cord stimulator known as the Genesis Neurostimulation System.[2,3]  The

---

[1] *Simmons v. Boston Scientific Corp.*, No. CV 12-7962 PA FFMX, 2013 WL 1207421, *6 (C.D. Cal. Mar. 25, 2013) (dismissing the Third Amended Complaint with prejudice as futile and due to repeated failures to plead a parallel claim); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (noting that a motion to amend could be denied because of repeated failures to cure deficiencies and futility).

[2] This Court may take judicial notice of the fact that a device has received PMA approval.  Fed. R. Civ. P. 201; *see, e.g.*, *Henderson v. Sun Pharms. Indus.*, 809 F.

FDA later granted supplemental PMA approval in 2008 for the Eon™ Mini Neurostimulation System.[4]   In doing so, the FDA approved the design, manufacturing processes, and labeling for the Eon™ Mini IPG as set forth in PMA Supplement No. S023.[5]

Plaintiff had the subject Eon™ Mini IPG implanted on December 24, 2009, *id.* ¶ 4, but it allegedly stopped functioning in June 2010, *id.* ¶ 5.  The IPG was removed and replaced with another Eon™ Mini IPG on October 20, 2010.  *Id.* ¶¶ 4,7.  Subsequent testing revealed that the first IPG's battery cracked along the seam where the battery's two-piece casing had been welded together.  *Id.* ¶¶ 8-9. The cracked battery weld caused electrolyte, which is contained within the battery, to leak inside the IPG, causing the IPG to fail.  *Id.*

Plaintiff's original Complaint filed in the State Court of Fulton County, Georgia, on October 24, 2011, did not allege that SJN had violated any PMA

---

Supp. 2d 1373, 1379 (N.D. Ga. 2011) (noting that judicial notice may be taken of documents made publicly available by a governmental agency and attachments to the complaint).

[3] Confirmation of PMA Approval No. P010032 for the Genesis Neurostimulation System may be found on the FDA's website at:
http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=2956

[4] Confirmation of the approval for PMA Supplement No. S023 for the Eon™ Mini Neurostimulation System may be found on the FDA's website at:
http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=19018

[5]  An application for supplemental premarket approval "is evaluated under largely the same criteria as an initial application."  *Riegel v. Medtronic, Inc.*, 552 U.S. 312, 319 (2008); *see also* 21 U.S.C. § 360e(d)(6); 21 C.F.R. § 814.39(c).

requirements.[6]  In a new effort to avoid preemption, Plaintiff submits her Third Amended Complaint that includes claims for (1) a manufacturing defect based upon negligence and strict liability, Counts II and III; (2) breach of implied warranty, Count IV; (3) failure to warn based upon negligence, Count II; (4) fraud based upon material misrepresentations, Count V; (5) a violation of the Georgia Fair Business Practices Act and the Uniform Deceptive Trade Practices Act, Count IV; and, (6) a breach of express warranty, Count I.

After 18 months of litigation, 64 docket entries, numerous telephonic and live hearings to address the scope of discovery, and the production of more than 14,000 pages of documents, it is notable—but, given the underlying facts, not surprising—that Plaintiff still has not identified a PMA requirement applicable to the manufacture of the subject IPG or adequately alleged any violation that relates to the focus of this case—the cracked battery weld.

Rather, in 175 paragraphs, 110 pages, and 20 exhibits, Plaintiff's Third Amended Complaint does nothing more than attempt to create a false impression that a parallel claim exists through the sheer volume of the pleading, irrelevant information, and conclusory allegations.  Although Plaintiff acknowledges that this case only involves a cracked battery weld in an Eon™ Mini IPG, *id.* ¶¶ 8-9, she

---

[6] (Def.'s Notice of Removal, Ex. A, Doc. 1-1.)

references information that she knows has nothing to do with her device, including a June 26, 2009 Warning Letter that arises out of an inspection of an SJN facility in Plano, Texas. *Id.* ¶ 30(a).[7] But, as Plaintiff concedes, her subject battery was not even manufactured there. *Id.* ¶ 3. It was manufactured by a supplier in Canada. *Id.* The Plano Warning Letter also addresses different products, *e.g.*, the Multiprogram Trial Stimulator ("MTS") and an Eon™ IPG—not the Eon™ Mini IPG. *Id.* ¶ 30, Ex. 11, *supra*.[8] Similarly, Plaintiff references various recalls involving the Eon™ Mini IPG. *Id.* ¶¶ 28-30. But this case does not relate to recalls involving the battery strap assembly, the positioning of the printed circuit board, or a heating issue. *Id.* ¶ 8. Plaintiff goes further and references a recall of seven specific Eon™ Mini IPGs to suggest that a "missed inspection step" occurred here, but the serial numbers listed on the recall notice definitively establish that the recall has nothing to do with Plaintiff's IPG, which bears a serial number of "13751671." *Id.* ¶¶ 3, 30(b), Ex. 12. A litany of allegations unrelated to Plaintiff's device cannot provide the basis for a viable parallel claim, and that is particularly true in this case, where Plaintiff has had access to information about

---

[7] The FDA's June 26, 2009 Warning Letter is available on the FDA's website at: http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm170224.htm

[8] An MTS Model 3510 is a non-implantable, externally-worn pulse generator used during trial procedures to determine the effect of the leads in providing pain relief before an IPG is permanently implanted.

her device.

Pleading a claim that avoids express and implied preemption is not easy. The requirements are strict.  And the landscape has been aptly described as being a "narrow gap" through which claims can avoid express and implied preemption.  *In re Medtronic, Inc., Sprint Fidelis Leads Prod. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010).  Plaintiff's claims fail to fit through this "narrow gap."

## II.    ARGUMENT AND CITATION OF AUTHORITIES

Federal law expressly preempts state law causes of action against manufacturers of Class III medical devices receiving premarket approval pursuant to 21 U.S.C. § 360k.  *Riegel*, 552 U.S. at 330.  In order to determine whether express preemption applies, "[f]irst, a court must 'determine whether the Federal Government has established requirements applicable [to the device].'"  *Wolicki-Gables v. Arrow Int'l, Inc.*, 634 F.3d 1296, 1301 (11th Cir. 2011).  Because PMA approval necessarily imposes requirements that are specific to the device, PMA approval automatically satisfies this first prong of this preemption test.  *Riegel*, 552 U.S. at 323.  Second, "[the court] must then determine whether the [plaintiff's] common-law claims are based upon [state law] requirements with respect to the device that are 'different from, or in addition to' the federal ones, and that relate to safety and effectiveness."  *Wolicki-Gables*, 634 F.3d at 1301.  If a state law claim

imposes different or additional requirements, then those state law claims are expressly preempted under *Riegel*. *Id.*

### A. PLAINTIFF'S THIRD AMENDED COMPLAINT FAILS TO SATISFY THE REQUIREMENTS OF A PARALLEL CLAIM.

A parallel claim is an exception to the express preemption rule. In order to plead a parallel claim, a plaintiff must: (1) identify a PMA requirement—not a general federal regulation; (2) allege specific facts that plausibly allege a violation of the PMA requirement; (3) allege specific facts creating a "cognizable link" between the PMA violation, the defect, and the plaintiff's alleged injuries; and, (4) identify a state law duty that is "genuinely equivalent" to the purportedly violated PMA requirement.

### 1. The Eleventh Circuit requires the violation of a PMA requirement—not a violation of general regulations like CGMPs—to plead a parallel claim.

Honoring the rule of law in the Eleventh Circuit, this Court has required Plaintiff to identify "the particular PMA specifications she contends were violated" in order to avoid dismissal and obtain full discovery.[9] This Court cited *Wolicki-Gables* to explain that "an allegation of an unidentified PMA specification alone is insufficient to state a parallel claim." *Id.* at 10; *see also Wolicki-Gables*, 634 F.3d at 1301. Moreover, the Eleventh Circuit in *Wolicki-Gables* ruled that "[a] plaintiff

---

[9] (Nov. 7, 2012 Order at 11, Doc. 62.)

**must** allege that '[the] defendant violated **a particular federal specification referring to the device at issue**.'" *Wolicki-Gables*, 634 F.3d at 1301 (emphasis added) (citing *Ilarraza v. Medtronic, Inc.*, 677 F. Supp. 2d 582, 589 (E.D.N.Y. 2009)).

In *Wolicki-Gables*, the Eleventh Circuit cited with approval, *Ilarraza*, in which the court specifically rejected the use of vague regulations such as Current Good Manufacturing Practices ("CGMPs") to form the basis of a parallel claim, explaining that:

> These regulations are purposefully broad so as to apply to a broad range of medical devices. . . . **The intentionally vague and open-ended nature of the regulations relied upon is the precise reason why they cannot serve as the basis for a parallel claim.** Since these regulations are open to a particular manufacturer's interpretation, allowing them to serve as a basis for a claim would lead to differing safety requirements that might emanate from various lawsuits. This would necessarily result in the imposition of standards that are different from, or in addition to those imposed by the [Medical Device Amendments ("MDA")]—precisely the result that the MDA preemption provision seeks to prevent. Accordingly, where . . . plaintiff relies on nothing more tha[n] CGMP's in support of a parallel cause of action, preemption bars the claim.

*Ilarraza.*, 677 F. Supp. 2d at 589 (citations and quotations omitted) (emphasis added); *see also Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 284 (E.D.N.Y. 2009); *Gross v. Stryker Corp.*, 858 F. Supp. 2d 466, 495 (W.D. Pa. 2012) ("[a]llowing a plaintiff to plead non-specific regulations as a basis for a parallel

claim is inconsistent with the Supreme Court's reasoning in *Riegel* . . . as well as the pleading requirements articulated in *Twombly* [and] *Iqbal*.").

Judge Julie Carnes of the Northern District of Georgia has also acknowledged the Eleventh Circuit's binding precedent and required that "the complaint must further set forth facts pointing to specific **pre-market approval requirements** that have been violated." *Leonard v. Medtronic, Inc.*, 1:10-CV-03787-JEC, 2011 WL 3652311, *5 (N.D. Ga. Aug. 19, 2011) (brackets omitted).

A court from the Southern District of Georgia did the same in *Horn v. Boston Scientific Neuromodulation Corp.*, No. CV409-074, 2011 WL 3893812, *8-9 (S.D. Ga. Aug. 26, 2011).  Interestingly, the Plaintiff relied upon *Horn* to argue that her breach of express warranty claim escaped express preemption because the written "Limited Warranty" constituted a "voluntary contractual promise."[10]  Notably, however, the *Horn* court reasoned that a viable parallel claim could not be premised upon the violation of vague federal regulations:

> This Court is both **constrained by the controlling Eleventh Circuit precedent,** *Wolicki–Gables* . . . **and convinced by the reasoning it cites,** *Ilarraza* . . . .  This Court agrees that to allow a violation of such a flexible standard to result in liability would, in itself, be imposing a standard "different from, or in addition to" those imposed by the MDA.   Indeed, any claim based on QSRs or similarly vague FDA regulations would fail under comparable reasoning.

---

[10] (Pl.'s Br. in Opp. to Def.'s Mot. to Dismiss Pl.'s Am. Compl. at 12, Doc. 20.)

*Id.* at *9 (emphasis added) (internal citations omitted).

The rule is this: the controlling Eleventh Circuit law and this Court's own precedent require Plaintiff to plead a PMA requirement and sufficient facts to plausibly allege that the PMA requirement was indeed violated.  Plaintiff cannot rely upon generic allegations of violations of QSRs and CGMPs to assert a viable parallel claim, as she attempts to do in paragraphs fifty-one through sixty-seven, seventy-four, and seventy-five.  Claims premised upon these purported violations of general requirements cannot survive express preemption in this jurisdiction.

> **2.     A viable parallel claim must allege specific facts that create plausibility for a PMA violation.**

To avoid dismissal, a plaintiff must state a claim that is "plausible" on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim has facial plausibility only when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct, not that there is a "sheer possibility" of it.  *Id.*   A complaint "requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.  Factual allegations must be enough to raise a right to relief above the speculative level . . . ."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *accord Iqbal*, 556 U.S. at 678.

"Plaintiffs cannot simply incant the magic words '[defendant] violated FDA regulations' in order to avoid preemption."  *Wolicki-Gables*, 634 F.3d at 1301. "'[T]he complaint must set forth facts' pointing to specific PMA requirements that have been violated."  *Id.*  The Third Amended Complaint not only fails to identify a PMA requirement, it fails to allege specific facts that create "plausibility" that SJN violated a PMA requirement in the manufacturing of the subject IPG's battery.

Plaintiff attempts to distract this Court with irrelevant information and conclusory allegations by referencing various recalls, the FDA's June 26, 2009 Warning Letter, and FDA 483 observations.  But none of these documents contain any fact that would plausibly suggest that SJN violated any PMA requirement during the manufacture of Plaintiff's IPG or the subject battery.

First, the Plaintiff suggests that a recall is an admission of a PMA violation. Plaintiff contends that "[t]o the FDA a 'recalled' product is a violative product, [sic] it should not be on the market."  (Pl.'s Third Am. Compl. ¶ 30.)  This argument has been made and repeatedly rejected.  A voluntary recall conducted by SJN does not establish a PMA violation.  *See, e.g., Gross*, 858 F. Supp. 2d at 497 (finding that a voluntary recall and an FDA Warning Letter do not establish that the defendant had violated any PMA specification and dismissing all of the plaintiff's claims); *In re Medtronic*, 623 F.3d at 1204 (dismissing plaintiff's claims

on preemption grounds despite the FDA's Class I recall of the device).  Although Plaintiff references recalls relating to cracked battery welds, (Pl.'s Third. Am. Compl. ¶¶ 28(a), (f)), she fails to identify any PMA requirement SJN violated or allege any facts to create plausibility that SJN violated a PMA requirement.  At best, these recalls are nothing more than evidence of SJN's investigation into the IPG's malfunctions and its compliance with federal regulations.

Second, Plaintiff references an FDA Warning Letter dated June 26, 2009, which is available in the public record.  *Id.* ¶ 30(a), Ex. 11.  As discussed in detail above, the June 26, 2009 Warning Letter does not relate to the Eon™ Mini IPG, the manufacturing of the Eon™ Mini IPG's battery, or a cracked battery weld. Furthermore, the existence of an FDA Warning Letter alone does not establish, or plausibly suggest, that SJN violated a PMA requirement.  *See, e.g., Gross*, 858 F. Supp. 2d at 497; *see also Parker*, 584 F. Supp. 2d at 1301 (referencing two FDA Warning Letters was insufficient to plead a parallel claim).  The FDA explains that "[a] Warning Letter is informal and advisory . . . . [The] FDA does not consider Warning Letters to be final agency action . . . ."[11]

---

[11] The FDA's description of Warning Letters is found on its website at: http://www.fda.gov/ICECI/ComplianceManuals/RegulatoryProceduresManual/ucm176870.htm

Third, Plaintiff directs this Court to two "Form FDA 483s" from 2010 and 2011, which are referenced as "483s" and constitute observations made by FDA inspectors.  (Pl.'s Third Am. Compl. ¶¶ 74-75.)  Form 483s also do not represent a final Agency determination regarding [the manufacturer's] compliance."  (FDA Form 483 dated May 2, 2011, Pl. Third Am. Compl. ¶ 74, Ex. 17); *see also Gross*, 858 F. Supp. 2d at 473 n.9.[12]  Like FDA Warning Letters, the existence of a 483 alone, does not establish that a manufacturer has violated a PMA requirement. Furthermore, both inspections related to the 483 observations occurred in Plano, Texas, but the subject battery was manufactured by a supplier in Canada.  *Id.* ¶ 3. This underscores the irrelevance the 483s have to the manufacturing of the subject battery.

Plaintiff cites to the 483 from 2011, but the observations relate to the printed circuit board, the manufacturing of leads and extensions, a heat generation issue, procedures for Corrective and Preventative Action plans ("CAPAs"), the handling of complaints, and the timely filing of Medical Device Reports ("MDRs").  *Id.* ¶ 74.  Plaintiff suggests, however, that all of these 483 observations are directly applicable to the Eon™ Mini IPG's battery.  *Id.*  Despite Plaintiff's effort to mislead this Court, the 2011 483 does not address the PMA requirements for the

---

[12] The FDA confirms that a 483 does not constitute a final Agency determination: http://www.fda.gov/ICECI/EnforcementActions/ucm256377.htm

manufacturing of the subject battery, and Plaintiff cannot truthfully allege that it does.

Plaintiff also references a 2010 483 to make general and conclusory allegations regarding the Eon™ Mini IPG. *Id.* ¶ 75. In similar fashion, she states that SJN violated "PMA and CGMP requirements" in that SJN's personnel were not properly trained and supervised, had an inadequate understanding of the required assembly techniques, and that SJN failed to implement changes in the manufacturing and assembly methods for the Eon™ Mini IPG's batteries, among other allegations. *Id.* These conclusory allegations do not identify a PMA requirement or explain how the 2010 483 lends plausibility to the alleged violation of a PMA requirement in the manufacturing of the IPG's battery. The references to recalls, the Warning Letter, and the 483 observations fail to create the necessary plausibility for a PMA violation in the manufacture of the subject battery.

### 3. A parallel claim must allege specific facts that create a cognizable link between the alleged PMA violation and the malfunction and injury.

This Court has also held that Plaintiff must causally "link" any alleged violations of PMA requirements to the Plaintiff's alleged injuries.[13] There must be a factual basis establishing a "cognizable link" between the PMA violation, the

---

[13] (Nov. 7, 2012 Order at 15.)

defect, malfunction, and the alleged injury. *See, e.g., Wolicki-Gables*, 634 F.3d at 1301-1302; *Horowitz*, 613 F. Supp. 2d at 282. "This causal connection is 'a critical element' of a properly pled parallel claim because premarket approval does not mean that a medical device will never result in injuries, only that the benefits outweighs the risks of probable injuries." *Leonard*, 2011 WL 3652311 at *6. Here, the Third Amended Complaint remains silent in response to the Court's demand for a "link" and, thus, fails to avoid express preemption.

### 4. A parallel claims requires a "genuinely equivalent" state law claim.

Last, but not least, a viable parallel claim also requires there to be a cause of action based on a state-law requirement that is "genuinely equivalent" to the PMA requirement that was allegedly violated. *Wolicki-Gables*, 634 F.3d at 1300; *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005). Otherwise, a state law claim does not run "parallel" to the federal requirement. "State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law." *Wolicki-Gables*, 634 F.3d at 1301 (citing *McMullen*, 421 F.3d at 489). Analyzing Plaintiff's claims within this framework reveals that all of them fail to satisfy one or more pleading requirements of a parallel claim and, therefore, fail to avoid express preemption.

### B.   PLAINTIFF'S MANUFACTURING DEFECT CLAIMS ARE EXPRESSLY PREEMPTED.

Plaintiff asserts manufacturing defect claims for strict liability and negligence in Counts II and III of Plaintiff's Third Amended Complaint.  (Pl.'s Third Am. Compl. ¶¶ 100-109.)  These claims fail because they do not identify any PMA requirement, any specific facts supporting a violation of that specific PMA requirement that relates to the manufacturing of the subject IPG's battery, or any link to the cracked battery weld.  Plaintiff's failure to satisfy these pleading requirements necessitates dismissal of the manufacturing defect claims because they impose different and additional requirements upon SJN.

### 1.   The ten-year battery life estimate is only a performance specification—not a performance requirement—and, therefore, Plaintiff fails to identify a PMA requirement.

Plaintiff alleges that SJN violated a PMA requirement because the subject IPG failed to last ten years.  *Id.* ¶ 78.[14]  She points to the PMA Supplement No. S023, which SJN submitted to the FDA to obtain PMA approval for the Eon™ Mini Neurostimulation System.  *Id.*  This PMA Supplement notes that the Eon™

---

[14] Paragraph 78 also references some statements from the PMA Supplement No. S023 for "temperature rise during charging" and "tack welding the second can half to the can base . . . and a functional post weld test."   Assuming *arguendo* these statements constitute PMA requirements, Plaintiff pleads no facts to plausibly suggest that SJN violated any of them in the manufacturing of the subject battery or that any violation caused the cracked battery weld here.

Mini "IPG has a minimal longevity [of] 10 years at **nominal** settings." *Id.* (emphasis added).

The ten-year estimate is only a performance specification of how the IPG is intended to operate when manufactured according to the PMA-approved design and manufacturing processes. This is evident by the PMA's use of the word "nominal." This ten-year reference is not a guarantee that the IPG will always last ten years. But Plaintiff confuses this performance "specification" with a performance "requirement," the latter of which may form the basis of a parallel claim. This critical distinction has been addressed by the Fourth Circuit in *Walker v. Medtronic*, *Inc.*, 670 F.3d 569, 573 (4th Cir. 2012) *cert. denied*, 133 S. Ct. 162, 184 L. Ed. 2d 234 (2012), and their reasoning shows why Plaintiff's manufacturing defect claims cannot survive preemption here.

The Fourth Circuit in *Walker* specifically rejected Plaintiff's argument that a performance specification constituted a performance requirement that, if not achieved, could give rise to a parallel claim. *Id.* at 578. In *Walker,* the plaintiff's estate brought a wrongful death lawsuit when Medtronic's SynchroMed EL Programmable Pump (commonly referred to as a "pain pump") delivered a deadly and "extreme overdose of 258 percent" of the medication's dosage for hydromorphone. *Id.* at 582. When the FDA granted PMA approval for the pain

pump at issue in *Walker*, the FDA approved the labeling, which stated that the pain pump had a "plus or minus 15 percent flow rate accuracy." *Id.* at 578.  The plaintiff argued that the ± 15% flow rate specification constituted a performance requirement and, when the pump failed to deliver the medication in that range, it constituted a PMA violation that permitted a parallel claim.  *Id.*

The Fourth Circuit rejected this argument because it was apparent that the FDA did not intend to impose a performance "requirement" on the pain pump.  *Id.* at 580.   The FDA could have imposed a "requirement" by creating a formal performance standard, through its regulatory process, but it did not.  *Id.* at 571, 573.  In support of its conclusion that the ± 15% flow rate specification was not a requirement, the Fourth Circuit cited the pain pump's Technical Manual, which was approved by the FDA, and contained a number of warnings making it clear that the flow rate specification was subject to many variables.  *Id.* at 579.  Not only did the Technical Manual warn about the inherent risk of implanting the pain pump in an "extremely hostile environment of the human body," it also stated that "component failure" could change the flow rate accuracy and listed overinfusion as a possible consequence.  *Id.* at 579-80.  Based upon these facts, the Fourth Circuit reasoned that:

> Nothing in the . . . [pain] pump's premarket approval application—
> which was approved in its entirety by the FDA—purported that the

device would always dispense medication within the range of the plus or minus 15 percent flow accuracy. Instead, the plus or minus 15 percent specification reflects the [pain] pump's output under optimal conditions, but subject to numerous qualifiers that disclose the possibility of infusion outside this range. To the extent that Walker interprets the plus or minus 15 percent specification as a guarantee of performance, she seeks to impose a more demanding standard than that of the FDA, rather than a parallel one.

*Id.* at 580. Therefore, the plaintiff's claims for negligence, strict liability, and breach of warranty were expressly preempted. *Id.* at 581.

Plaintiff attempts to advance the same argument made in *Walker* by arguing that the ten-year battery life estimate constitutes a performance requirement that, if not achieved, constitutes a PMA violation and allows a parallel claim. In connection with the original PMA approval for the Genesis IPG, the FDA made public, as required by law, the Summary of Safety and Effectiveness Data ("SSED"), which provides a detailed summary of the safety and effectiveness data on which the FDA based its PMA approval. 21 U.S.C. § 360j(h)(1).[15] A copy of the SSED is attached to Plaintiff's Third Amended Complaint as Exhibit "3." Similar to the Technical Manual in *Walker*, the FDA acknowledged in the SSED that "[t]he implantation of a neurostimulation system involves risk." (Pl.'s Third

---

[15] A detailed explanation about SSED's is available on the FDA's website at: http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/HowtoMarket YourDevice/PremarketSubmissions/PremarketApprovalPMA/ucm050289.htm#ssd

Am. Compl., Ex. 3 at 14.)[16]  Far from memorializing a requirement that the device never malfunctions, the SSED explicitly recognized that "device failure" and "battery failure and/or battery leakage may occur." *Id*.  The SSED even noted that the IPG's actually experienced "hardware malfunction" and "battery failure" during clinical trials.  *Id.* at 18-21.  Consistent with this history, even the FDA-approved labeling for the IPG warns that implantation of the device involves risk and that "battery failure and/or battery leakage may occur."  *Id.* at 31, 102.[17]

Furthermore, the Eon™ Mini Charging System User's Guide, which the FDA approved as a part of the IPG's labeling, warns that "these implantable components must withstand exposure to an extremely hostile and unpredictable environment in the human body.  The implanted components may fail during or following implantation into the body for any one or a number of reasons . . . ."[18]  It also notes that SJN "makes no representations . . . that failure or cessation of function of any component, or the system will not occur . . . ."  *Id.*

The failure of a Class III medical device is not sufficient to support an

---

[16] The SSED is publicly available at:
http://www.accessdata.fda.gov/cdrh_docs/pdf/P010032b.pdf
[17] The FDA-approved labeling for consumers is publicly available on the FDA's website at:  http://www.accessdata.fda.gov/cdrh_docs/pdf/P010032c.pdf  and http://www.accessdata.fda.gov/cdrh_docs/pdf/P010032d.pdf
[18]  (Eon Mini Charging System User's Guide at 16; Pl.'s Third Am. Compl. ¶ 92, Ex. 18.)

inference that a manufacturer violated a PMA requirement.  But Plaintiff asks this Court to make this unsubstantiated inference here.  "One may not infer a defect in the product simply because a patient encountered negative side effects in using it." *Funk*, 673 F. Supp. 2d at 531.  As Judge Julie Carnes of the Northern District of Georgia also recognized in *Haynes v. Cyberonics, Inc.*, "a manufacturer could comply with all FDA regulations, but nevertheless produce a product containing an unintended flaw or abnormal condition."   No. 1:09-CV-2700-JEC, 2011 WL 3903238 *5 (N.D. Ga. Sept. 6, 2011).[19]

Although the FDA expected that an IPG that was manufactured according to the design and manufacturing processes required by the FDA would last ten years at "nominal" settings, it did not require that each individual device actually last ten years, nor did it require SJN to guarantee such longevity.  On the contrary, the FDA specifically acknowledged and accepted the risk of battery leakage and battery failure.  Consequently, the ten-year battery life estimate constitutes a performance "specification" of how long the IPG is expected to perform under "nominal" settings—not an actual guarantee as a performance "requirement."   As such, Plaintiff's allegation that the IPG must have lasted ten years does not identify

---

[19] *See also Gross*, 858 F. Supp. 2d 466, 499 (W.D. Pa. 2012) ("The PMA process . . . does not guarantee that a medical device will be free of risks."); *Riegel*, 552 U.S. at 318 (acknowledging that the FDA may approve devices that present great risks if they offer great benefits).

- 21 -

a PMA requirement, and her Third Amended Complaint does not identify a PMA requirement applicable to the manufacturing of the IPG's battery.

**2.    Plaintiff fails to allege sufficient facts that link the violation of a PMA requirement to the cracked battery weld.**

Despite the Court's instruction to allege facts that plausibly suggest the violation of a specific PMA requirement and a causal connection between that PMA violation and Plaintiff's alleged injuries, (Nov. 7, 2012 Order at 11), only 4 out of 175 paragraphs of the Third Amended Complaint specifically reference the relevant PMA Supplement at all. *See, e.g.*, (Pl.'s Third Am. Compl. ¶¶ 24-26, 78.) These paragraphs mention the ten-year battery life estimate, without saying anything at all about specific manufacturing requirements imposed in the PMA, how SJN violated them, or how it caused the cracked battery weld in this case.

Instead, the Third Amended Complaint makes irrelevant, conclusory, and general allegations that SJN "violated federal regulations and guidelines in the manufacturing . . . of the Eon Mini," *id.* ¶ 30, and failed to meet CGMP/QSR requirements  "by failing to insure proper manufacturing techniques . . . . ," *id.* ¶ 67.  As Plaintiff fails to assert the "critical facts" necessary to satisfy *Riegel*, *Twombly*, *Iqbal*, *Wolicki-Gables*, *Leonard*, and this Court's November 7, 2012 Order, Plaintiff's manufacturing defect claims are inadequately pled.

3. **Plaintiff erroneously contends that she is entitled to a presumption of a PMA violation due to spoliation, but the FDA required SJN to conduct a failure analysis on the subject battery.**

Plaintiff contends that SJN spoliated the subject battery and that, as a result, she is entitled to a rebuttable presumption that SJN violated a PMA requirement in the manufacturing of the subject IPG's battery. (Pl.'s Third Am. Compl. ¶ 104.) Plaintiff asks for this presumption, presumably, because she knows she has not identified a PMA requirement or a violation and hopes to avoid the necessary consequence of that inability, which is dismissal of this suit.

In doing so, Plaintiff ignores the reality that federal regulations required SJN to investigate Plaintiff's IPG. "Manufacturers should process and analyze failed devices per [21 C.F.R. §] 820.100. . . Failure analysis must be conducted by appropriately trained and experienced personnel [820.25(b)]." *See also* 21 C.F.R. §§ 820.100, 820.198(c).[20] On one hand, and as set forth in her failure to warn claim, Plaintiff complains that SJN did not do enough to investigate the issue of the cracked battery welds. (Pl.'s Third Am. Compl. ¶¶ 59, 81.) Yet, on the other

---

[20] The FDA's guidance on the post-market requirement for device failure analysis can be found at:
http://www.fda.gov/MedicalDevices/DeviceRegulationandGuidance/PostmarketRequirements/QualitySystemsRegulations/MedicalDeviceQualitySystemsManual/ucm122686.htm

hand, she complains that SJN investigated the failure of her IPG and identified a cracked battery weld.  Such a contradictory position cannot be taken seriously.

Moreover, Plaintiff's request for a spoliation presumption under state law imposes a different and additional requirement upon SJN that interferes with the FDA's regulation of the medical device and the federal requirements for post-market surveillance.  Under Plaintiff's rubric, SJN may be in compliance with the FDA's requirement to conduct a failure analysis on Plaintiff's returned IPG, but then be held liable for a manufacturing defect under state law for having conducted the very analysis required by federal law.  Such a conflicting result contravenes *Riegel*, and, therefore, this Court should reject the application of any spoliation presumption to conclude that SJN violated any PMA requirement.

If this were not enough, SJN notes that in a diversity action, "federal law governs the imposition of spoliation sanctions . . . because spoliation sanctions constitute an evidentiary matter."  *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005).  As the Eleventh Circuit has not established specific factors for spoliation, the Eleventh Circuit may apply those factors existing under Georgia law.  *Id.* at 944.  In determining whether sanctions are appropriate, this court may consider: (1) whether the [plaintiff] was prejudiced as a result of the destruction of the evidence; (2) whether the prejudice could be cured; (3) the practical importance

of the evidence; (4) whether the [defendant] acted in good or bad faith; and, (5) the potential for abuse if expert testimony about the evidence was not excluded. *Bridgestone/Firestone N. Am. Tire, LLC v. Campbell*, 258 Ga. App. 767, 768-69, 574 S.E.2d 923, 926 (2002).

Here, the Plaintiff has not been prejudiced by the failure analysis performed on the subject battery.  Pursuant to a Court Order and a Protective Order, SJN provided a copy of the battery's failure analysis report that discussed the nature of Plaintiff's battery failure and included photographs of the actual battery.  (Pl.'s Third Am. Compl. ¶¶ 8-9.)  Moreover, the manufacturer and custodian of the Plaintiff's battery offered to make the battery available to Plaintiff for an inspection, but Plaintiff decided not to incur the cost of inspecting it.  *Id.* ¶ 103, Ex. 20.  This Court also permitted Plaintiff to subpoena the battery for an inspection, if needed, (Feb. 12, 2013 Order at 4-5), but Plaintiff decided that it was not necessary.  SJN acknowledges that the information from the subject battery is important, but the information from the battery has already been preserved and provided to the Plaintiff, and the Plaintiff had the opportunity to inspect the battery.  Finally, SJN acted in good faith and in accordance with federal law by obtaining a failure analysis on Plaintiff's returned IPG.  In fact, the battery manufacturer—not SJN—conducted the failure analysis, and this occurred in

February 2011 before this litigation ever ensued.  The consideration of these spoliation factors weigh heavily against applying any presumption adverse to SJN—not to mention that it is impermissible under a preemption analysis.

### C.  PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM IS PREEMPTED AND FAILS UNDER GEORGIA LAW.

Plaintiff's new claim for breach of an implied warranty, which is set forth in Count IV, is expressly preempted.  (Pl.'s Third Am. Compl. ¶¶ 110-114.)  Plaintiff merely recites the formulaic elements of her claim—again, in violation of *Twombly*—and reiterates her contention that the IPG should have lasted ten years. *Id.* ¶ 112.  As explained above, the ten-year battery life estimate does not constitute a performance requirement, and Plaintiff has not otherwise identified a PMA requirement that relates to the manufacturing of this IPG's battery.  Plaintiff has also failed to allege any facts that plausibly suggest a deviation from the design or manufacturing requirements imposed by the device's PMA or link any such PMA violation to the cracked battery weld.  Thus, as the Southern District of Georgia stated in *Horn*, "this [implied warranty claim] is precisely the type of state law claim that is 'different from, or in addition to' the requirements mandated by the FDA." *Horn*, 2011 WL 3893812 at *7.  Accordingly, Plaintiff's implied warranty claim is expressly preempted.

Even assuming *arguendo* that the breach of implied warranty claim avoids

express preemption—and it does not—the claim also fails to state a claim under Georgia law.  Plaintiff fails to allege with any plausibility that she is in privity with SJN, as required.  *See, e.g.*, *Lamb v. Georgia-Pacific Corp.*, 194 Ga. App. 848, 850, 392 S.E.2d 307, 309 (1990).[21]   Therefore, Plaintiff's breach of implied warranty claim fails to state a claim and must be dismissed.

### D. PLAINTIFF'S FAILURE TO WARN CLAIM FAILS TO AVOID EXPRESS AND IMPLIED PREEMPTION.

The judicially noticeable SSED and labeling for the IPG advises that device failure, battery failure, or battery leakage may occur.  (Pl.'s Third Am. Compl., Ex. 3 at 14.).[22]   Despite this, Plaintiff asserts a new negligent failure to warn claim in Count II.  *Id.* ¶¶ 37-50,100-105.   She contends that SJN violated 21 C.F.R. § 803.50 and 21 U.S.C. 360i to timely report MDRs to the FDA.  *Id.*   Even so, Plaintiff's failure to warn claim is expressly and impliedly preempted.

---

[21] Numerous courts have applied this rule in the context of implanted medical devices.  *See, e.g.*, *Andrews v. RAM Medical, Inc.,* No. 7:11-cv-147, 2012 WL 1358495, at *2 (M.D. Ga. Apr. 19, 2012); *Gowen v. Cady*, 189 Ga. App. 473, 476, 376 S.E.2d 390, 393 (1988); *Baker v. Smith & Nephew Richards, Inc.*, No. 1:97-CV-1233, 1999 WL 1129650, at *8 (N.D. Ga. Sept. 30, 1999).

[22] The FDA-approved labeling found in the Eon™ Mini Charging System User's Guide, which Plaintiff admits that she received, also warns that "[t]he implanted components may fail during implantation into the body for any one or a number of reasons . . . [SJN] makes no representations or warranties that failure or cessation of function of any component, or the system will not occur."  (Pl.'s Third Am. Compl. ¶ 92; Cline-PMA Supp 023-08728.)   The Patient Programmer User's Guide provides this same warning and also notes that "battery failure and/or battery leakage may occur."  (Cline-PMA Supp 023-08741, 08771.)

1.      **Plaintiff's failure to warn claim challenges the FDA-approved labeling for the IPG and, therefore, express preemption applies.**

Notably, Plaintiff does *not* allege that SJN failed to provide any of the warnings required by the device's PMA.  Rather, she alleges that the FDA-approved labeling that "battery failure and/or battery leakage may occur" was inadequate.  Plaintiff's failure to warn claim amounts to an assertion that SJN should have issued warnings different from or in addition to those required by the FDA.  But any tort claim predicated on a state-law requirement that SJN provide warnings different from or in addition to those required by the FDA is preempted. *See, e.g.*, *Riegel*, 552 U.S. at 329 (§ 360k(a) "[s]urely . . . would pre-empt a jury determination that the FDA-approved labeling for a [device] violated a state common-law requirement for additional warnings"); *Wolicki-Gables*, 634 F.3d at 1301-02; *Leonard*, 2011 WL 3652311 at *8; *Haynes*, 2011 WL 3903238 at *8.

SJN could not, as a general matter, change the labeling for the IPG without the FDA's prior approval.  *Riegel*, 552 U.S. at 319.[23]  By arguing that SJN should have had a stronger warning or additional disclosures than what the FDA already required, Plaintiff's claim would impose a different and additional state-law

---

[23] "Once a device has received premarket approval, the MDA forbids the manufacturer to make, without FDA permission, changes in design specifications, manufacturing processes, labeling, or any other attribute, that would affect safety or effectiveness." *Riegel*, 552 U.S. at 319; *see also* 21 U.S.C. § 360e(d)(6)(A)(i).

requirement upon SJN that is expressly preempted.

Plaintiff alleges that SJN could have changed the labeling without FDA approval, but she is mistaken.   (Pl.'s Third Am. Compl. at ¶ 32) (citing an unspecified subpart of 21 C.F.R. § 814.39).   Although federal regulations *permitted* SJN to provisionally change the device label subject to certain conditions and ultimate FDA approval, *see* 21 C.F.R. § 814.39(d), federal regulations did not *require* SJN to do so.  *McMullen v. Medtronic, Inc.*, 421 F.3d 482, 489 (7th Cir. 2005) ("Because § 814.39 permits, but does not require, a manufacturer to provide interim supplemental warnings pending approval by the FDA, a common-law duty to provide such a warning imposes an additional obligation.").   Accordingly, any state-law requirement that SJN change the label would be "different from, or in addition to," the federal requirements.   As the Seventh Circuit has explained, "[w]here a federal requirement permits a course of conduct and the state makes it obligatory, the state's requirement is in addition to the federal requirement and thus is preempted." *Id*. at 489.

### 2.   Plaintiff's failure to warn claim fails to adequately plead a parallel claim.

Express preemption also bars Plaintiff's failure to warn claim because she fails to adequately plead a parallel claim.  She contends that SJN was required to provide information contained in the MDRs directly to the Plaintiff, the Plaintiff's

physician, and the public.  (Pl.'s Third Am. Compl. ¶¶ 50, 102.)  Plaintiff likewise complains of the failure to disclose internal investigations, CAPAs, and other information both before and after her IPG's implantation.  *Id.* ¶¶ 37, 102.

In order to escape express preemption, Plaintiff must first identify a PMA requirement at issue.  The PMA requirements applicable to a failure to warn claim are set forth in the labeling approved by the FDA in the PMA application—not the regulations to timely file MDRs with the FDA.  As Plaintiff does not allege that SJN failed to provide any FDA-approved labeling from the PMA, or deviated from any FDA-approved labeling from the PMA, that alone renders her failure to warn claim fatally deficient.

Assuming *arguendo* that the failure to timely file MDRs may form the basis of a parallel claim—which it cannot because it is not a PMA requirement—Plaintiff offers no specific facts to plausibly suggest that there were any untimely filed MDRs for cracked battery welds before the December 24, 2009 implant date. Plaintiff asserts that SJN initiated a Corrective and Preventative Action plan ("CAPA") 103792 on or about May 11, 2010, to address untimely filed MDRs.  *Id.* at 49-50.  But this does not create any plausibility that any of the MDRs relevant to CAPA 103792 involved any cracked battery welds or that any of these late-filed MDRs were even required to have been filed before December 24, 2009.  *Id.*

The inadequacy of the failure to warn claim, as alleged, does not end there. The causal link is also missing. Plaintiff does not plausibly allege any facts to suggest that the FDA would have made any additional information available to the Plaintiff, her physician, or to the public before December 24, 2009. The FDA even acknowledges that it "*may* disclose" MDRs to the public, but this is no guarantee. 21 C.F.R. § 803.9 (emphasis added). Even the Manufacturer and User Device Experience ("MAUDE") database, which is where the FDA publishes MDRs, acknowledges that not all adverse event reports are published and that "MAUDE data is not intended to be used either to evaluate rates of adverse events . . . ."[24]

Furthermore, Plaintiff fails to allege any specific facts that create any plausibility that engineers understood the failure mode of the subject IPG's battery before December 24, 2009; that SJN would have taken any earlier action to recall the Eon™ Mini IPG before December 24, 2009; that the FDA would have initiated a recall or withdrawn the PMA approval before December 24, 2009; or, that Plaintiff's physician would have investigated, learned new and different information about the risk for battery leakage and battery failure, and decided not

---

[24] The MAUDE database and a description of its purpose may be found on the FDA's website at:
http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfmaude/search.cfm

to implant an Eon™ Mini IPG on December 24, 2009.[25]  Plaintiff's failure to warn claim is highly speculative, at best, and because no plausible, cognizable link to her alleged injuries exists, it cannot survive express preemption.

### 3. The failure to warn claim is not "genuinely equivalent" to the federal requirement to report MDRs to the FDA and, therefore, it is expressly preempted.

The failure to warn claim also fails to avoid express preemption because the state law failure to warn claim articulated is not "genuinely equivalent" to the federal requirement to submit MDRs or any other requirement involving the investigation of device failures.  "State and federal requirements are not genuinely equivalent if a manufacturer could be held liable under the state law without having violated the federal law."  *Wolicki-Gables*, 634 F.3d at 1300.

Federal law only requires SJN to inform the FDA about MDRs.  21 C.F.R. § 803.50; 21 U.S.C. § 360i.  This unequivocally means SJN had no duty to directly notify Plaintiff, Plaintiff's physician, and/or the public about MDRs or any other aspects of internal investigations, CAPAs, or any other category of information referenced in the vague pleading found in the failure to warn claim.  SJN also had

---

[25] The cognizable link is seriously called into question by the fact that, despite her device failure, Plaintiff's physician chose to implant, and Plaintiff accepted, a second Eon™ Mini IPG on October 20, 2010.  *Id.* at 7.  Additionally, and despite the Plaintiff's allegation that SJN failed to timely file MDRs, the FDA has not withdrawn the PMA approval for the Eon™ Mini Neurostimulation System, and it remains on the market today.

no duty to ensure that the FDA made the information publicly available.  21 C.F.R. § 803.50.  Despite this, Plaintiff attempts to impose liability upon SJN when no federal law ever imposed these requirements upon SJN.  Therefore, Plaintiff's failure to warn claim imposes different and additional requirements that results in express preemption.

Moreover, there is no Georgia law requiring information to be provided to the patient—a further flaw in Plaintiff's effort to state a claim.  In Georgia, the learned intermediary doctrine applies to medical device manufacturers.  *McCombs v. Synthes (U.S.A.)*, 277 Ga. 252, 253, 587 S.E.2d 594, 595 (2003); *see also Lance v. Am. Edwards Lab.*, 215 Ga. App. 713, 716, 452 S.E.2d 185, 188 (1994).  "[T]he **manufacturer** of [a] . . . medical device **does not have a duty to warn the patient of the dangers** involved with the product, but instead has a duty to warn the patient's doctor, who acts as a learned intermediary between the patient and the manufacturer."  *McCombs*, 277 Ga. at 253, 587 S.E.2d at 595 (emphasis added).

But even this duty fails to mimic the federal requirement.  There simply is no federal requirement that forces SJN to unilaterally contact doctors regarding a potential device defect without FDA involvement.  *Leonard*, 2011 WL 3652311 at *9 (citing *Franklin v. Medtronic, Inc.*, No. 09-CV-02301REBKMT, 2010 WL 2543579 (D. Colo. May 12, 2010) *report and recommendation adopted*, 09-CV-

02301-REB-KMT, 2010 WL 2543570 (D. Colo. June 22, 2010).   This makes Plaintiff's failure to warn claim far from "genuinely equivalent" to the purported federal requirements regarding MDRs, CAPAs, and other obligations regarding investigations and reporting device adverse events and, therefore, imposes different and additional state requirements upon SJN that are expressly preempted.

### 4.   Plaintiff's failure to warn claim is impliedly preempted.

Plaintiff's failure to warn claim is also barred by implied preemption.  SJN's duty to report MDRs to the FDA arises solely out of federal law.  21 C.F.R. § 803.50; *see also* 21 U.S.C. 360i.  Congress has already determined that "all . . . proceedings for the enforcement, or to restrain violations, of this chapter shall be by and in the name of the United States."  21 U.S.C. § 337(a).

In interpreting § 337(a), the U.S. Supreme Court in *Buckman* ruled that the plaintiff's state law claim for fraud was impliedly preempted.  531 U.S. at 341.   In *Buckman*, the plaintiff claimed that the device manufacturer had made fraudulent representations to the FDA in connection with obtaining Section 510(k) approval to market orthopedic bone screws.  *Id.* at 343.  The plaintiff further alleged that, but for the fraudulent representations, the FDA would not have approved the bone screws and the plaintiff would not have been injured.  *Id.*  The U.S. Supreme Court ruled that the plaintiff's "fraud-on-the-FDA" claim was impliedly preempted

because "the relationship between a federal agency and the entity it regulates is inherently federal in character because the relationship originates from, is governed by, and terminates according to federal law." *Id.* at 347. "Given this analytical framework, [the U.S. Supreme Court held] that the plaintiffs' state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law." *Id.* at 348.

Just like the plaintiff in *Buckman*, the Plaintiff here attempts to "manufacture" a state law claim premised upon a regulatory framework that is entirely federal in nature. There is simply no state law duty to submit MDRs to the FDA. Any duty to do so "originates from, is governed by, and terminates according to federal law." Permitting Plaintiff's attempted "failure-to-warn-the-FDA" claim to proceed under state law requires Georgia juries to police medical device companies for noncompliance with the FDA's regulations. As the Eighth Circuit and other courts have held, failure-to-warn claims predicated on an alleged failure to submit MDRs "are simply an attempt by private parties to enforce the [Medical Device Amendments], [and are] claims foreclosed by § 337(a) as construed in *Buckman*." *In re Medtronic*, 623 F.3d at 1205, *aff'g In re Medtronic*, 592 F. Supp. 2d at 1160–61; *see also, e.g.*, *Leonard*, 2011 WL 3652311 at *6; *McClelland v. Medtronic, Inc.*, 6:11-CV-1444-ORL-36, 2012 WL 5077401, *6-7

(M.D. Fla. Sept. 27, 2012).   Accordingly, Plaintiff's failure to warn claim is subject to dismissal on this ground.

## E.   FEDERAL LAW PREEMPTS PLAINTIFF'S FRAUD CLAIM FOR MATERIAL MISREPRESENTATIONS.

Plaintiff asserts a new fraud claim for material misrepresentations in Count V.  (Pl.'s Third Am. Compl. ¶¶ 115-156.)  She again complains that SJN failed to timely file MDRs about battery failures before December 24, 2009, *id.* ¶¶ 116-119, 146, or communicate that in obtaining PMA approval, SJN had not tested the battery under real-world conditions, *id.* ¶ 148.  She alleges this information should have been provided to the Plaintiff, Plaintiff's physician, and the public.  *Id.* ¶ 50.

### 1.   Plaintiff's fraud claim is expressly preempted.

The same arguments applicable to the failure to warn claim are applicable here.  To avoid restating all the same arguments, SJN highlights the fact that the fraud claim is expressly preempted because there is no genuinely equivalent duty under state law to submit information to the FDA, whether in the form of additional battery tests before PMA approval or in the form of MDRs after PMA approval was granted.  SJN also had no duty under federal law to provide Plaintiff, Plaintiff's physician, or the public directly with this information.  Therefore, the state law fraud claim imposes different and additional duties upon SJN that are not contemplated by the federal requirements such that this fraud claim is expressly

preempted.

To the extent Plaintiff challenges the adequacy of the FDA-approved warning that "battery failure and/or battery leakage may occur," Plaintiff attempts to impose a stricter labeling requirement upon SJN than what the FDA already approved. "To permit a jury to decide [the plaintiff's] claims that the information, warnings, and training material the FDA required and approved through the PMA process were inadequate under state law would displace the FDA's exclusive role and expertise in this area and risk imposing inconsistent obligations on [defendants]." *Horowitz*, 613 F. Supp. 2d at 285 (emphasis added).

### 2.    Plaintiff's fraud claim is impliedly preempted.

Plaintiff's fraud claim is also impliedly preempted. In connection with her fraud claim, Plaintiff contends that SJN "led Plaintiff, her medical providers and the general public to believe that the battery technology had been adequately and properly tested under real-world conditions, that the manufacturing processes had been properly verified to insure the batteries were properly manufactured, and that these devices were safe and would last for 10 years . . . ." (Pl.'s Third Am. Compl. ¶ 150.) Given that the FDA has granted PMA approval for the Eon™ Mini IPG and despite the Agency's knowledge that "battery failure and/or battery leakage may occur," (SSED at 18-21, 31), Plaintiff's allegations suggest that SJN

committed a fraud upon the FDA that, in turn, allowed Plaintiff to be implanted with this subject IPG.  This, however, is exactly the type of claim that the U.S. Supreme Court offered as an example of implied preemption.  *See Buckman*, *supra.*  To the extent any fraud-on-the-FDA has occurred—and it has not—the FDA must address it, not the Plaintiff.  *Id.*; *see also* 21 U.S.C. § 337(a).

### F.   PLAINTIFF'S CLAIMS FOR VIOLATIONS OF THE GEORGIA FAIR BUSINESS PRACTICES ACT AND THE UNIFORM DECEPTIVE TRADE PRACTICES ACT ARE PREEMPTED, AND THEY FAIL UNDER GEORGIA LAW.

Plaintiff asserts a new cause of action in Count VI premised upon violations of the Georgia Fair Business Practices Act, under O.C.G.A. § 10-1-390 *et seq.*, and the Uniform Deceptive Trade Practices Act, under O.C.G.A. § 10-1-370 *et seq.* (Pl.'s Third Am. Compl. ¶¶ 157-168.)   Plaintiff claims that SJN violated these statutes by deceptively promising that the IPG was safe and effective; that the IPG's battery would last ten years; by not adequately testing the Eon™ Mini IPG under real-world conditions to claim a ten-year battery life; and, by failing to timely report MDRs to the FDA.  *Id.* ¶ 162.  For all the reasons stated above with respect to Plaintiff's failure to warn and fraud-based claims, these claims are also preempted, both expressly and impliedly.[26]

---

[26] Plaintiff's claim for a violation of the Georgia Fair Business Practices Act also fails to state a claim upon which relief can be granted.  The prerequisite for

### 1. Federal law expressly preempts Plaintiff's claims for violations of consumer fraud statutes.

Plaintiff's allegations demonstrate her fundamental misunderstanding of *Riegel* and express preemption. The purpose of 21 U.S.C. § 360k was to prevent state law causes of action, like this, that interfere with the FDA's regulation of the medical device. SJN does not recapitulate every argument. But suffice it to say that in granting PMA approval for the Eon™ Mini IPG, the FDA conclusively determined, as a matter of preemptive federal law, that "there [was] a 'reasonable assurance' of the device's 'safety and effectiveness,'" *Riegel*, 552 U.S. at 318 (quoting 21 U.S.C. § 360e(d)), despite knowing the potential for "battery failure and/or battery leakage," (SSED at 18-21, 31), and that the device's labeling—including the stated expectation that the device would function for ten years—"is neither false nor misleading," *Riegel*, 552 U.S. at 318.

These claims challenge the FDA's PMA approval for this device by questioning whether the IPG was actually "safe and effective" and whether the testing provided by SJN was adequate to support the PMA Supplement for the ten-year battery life estimate. Federal law specifically prohibits Plaintiff from

---

asserting such a claim is providing 30-days notice before filing a lawsuit. O.C.G.A. § 10-1-399(b). Plaintiff appears to acknowledge this requirement by her reference to her claim as "Count VI – Notice of Claim." Inexplicably, she asserts this claim anyway in contravention of Georgia law. *See, e.g., Sharpe v. Gen. Motors Corp.*, 198 Ga. App. 313, 314, 401 S.E.2d 328, 330 (1991).

challenging the very approval of this medical device and the FDA's assessment of its safety and effectiveness.  Liability can arise from these statutes *only* by second-guessing the FDA's approval of the labeling, testing, and manufacturing requirements imposed upon SJN, which § 360k precludes.

With regard to Plaintiff's claim that SJN failed to timely report MDRs to the FDA, neither the Georgia Fair Business Practices Act nor the Uniform Deceptive Trade Practices Act imposes a "genuinely equivalent" state law duty to submit MDRs to the FDA—much less any affirmative duty to report information to the Plaintiff, Plaintiff's physician, or to the public.  Therefore, these claims constitute different and additional requirements that require express preemption.

### 2. Federal law impliedly preempts Plaintiff's claims for violations of consumer fraud statutes.

To the extent Plaintiff claims that SJN duped the FDA with its data and testing to obtain a PMA Supplement for a ten-year battery life estimate, the Plaintiff's claims are impliedly preempted as it is tantamount to a fraud-on-the-FDA claim per *Buckman*.  *Buckman*, *supra*; *see also* 21 U.S.C. § 337(a).

### 3. Plaintiff's alleged violations of consumer fraud statutes fail to state a claim under Georgia law because they do not apply in the face of SJN's compliance with federal law.

Assuming *arguendo* that these claims survive express and implied preemption—which they do not—they must still be dismissed because they fail to

state a claim under Georgia law.  Both consumer fraud statutes provide a "safe harbor" for compliance with federal law.  For example, the Fair Business Practices Act does not apply to "[a]ctions or transactions specifically authorized under laws administered by or rules and regulations promulgated by any regulatory agency of this state or the United States."  O.C.G.A. 10-1-396(1).  Similarly, the Unfair and Deceptive Trade Practices Act does "not apply to . . . [c]onduct in compliance with the orders or rules of or a statute administered by a federal, state, or local governmental agency."  O.C.G.A. § 10-1-374(a)(1).  Because Plaintiff has failed to plausibly allege that SJN violated any design, labeling, and/or manufacturing processes set forth in the PMA, she cannot show that SJN is not in compliance with federal law.  As noncompliance with federal law would be required to apply these consumer fraud statutes, these statutes are not applicable here.[27]   Thus, Plaintiff fails to state a claim such that these claims must be dismissed.

### G.  THE BREACH OF EXPRESS WARRANTY CLAIM FAILS TO SURVIVE EXPRESS PREEMPTION AND FAILS TO STATE A CLAIM UNDER GEORGIA LAW.

Plaintiff asserts a breach of express warranty claim in Count I.  (Pl.'s Third Am. Compl. ¶¶ 88-99.)  Her claims are based upon the purported representations

---

[27] *See, e.g., Prohias v. AstraZeneca Pharmaceuticals, L.P.*, 958 So. 2d 1054, 1056 (Fla. Dist. Ct. App. 2007).

(1) that the subject IPG was "guaranteed" to last ten years, *id.* ¶ 93, and (2) that the "Charging System" would be "free from defects in material or workmanship within one (1) year," *id.* ¶ 92.  Even assuming that the Limited Warranty applies to the IPG as well, both express warranty claims fail to state a claim because, under Georgia law, privity is required, and Plaintiff fails to plausibly allege that SJN is in privity with Plaintiff.  *See, e.g.*, *Lamb*, 194 Ga. App. at 850, 392 S.E.2d at 309.

Additionally, this Court previously ruled that the Plaintiff's breach of express warranty claim for the Limited Warranty escaped express preemption because it created a "voluntary contractual promise" that did not implicate "safety or effectiveness" and that it did not constitute a "state-established" requirement.[28] Notwithstanding this conclusion, Plaintiff's breach of express warranty claim based on the Limited Warranty is subject to dismissal because Plaintiff does not allege sufficient facts to plausibly suggest that any breach occurred.  To the extent the breach of express warranty claim is premised upon the IPG's failure to last ten years, the claim is expressly preempted.

### 1.    SJN made no express warranty that guaranteed a ten-year battery life.

As an initial matter, SJN never warranted that the subject IPG would be failure-proof for ten years.  Rather, the Limited Warranty contained in the Eon™

---

[28] (June 15, 2012 Order at 8-17, Doc. 25.)

Mini Charging System User's Guide, which the Plaintiff admits she received, provides that "[t]he implanted components may fail during implantation into the body for any one or a number of reasons . . . [SJN] makes no representations or warranties that failure or cessation of function of any component, or the system will not occur." *Id.* ¶ 92.   The labeling also provides that:

> THIS LIMITED WRITTEN WARRANTY CONTAINS THE FINAL, COMPLETE AND EXCLUSIVE STATEMENT OF WARRANTY . . . AND IT APPLIES IN LIEU OF ANY WARRANTY, EXPRESS OR IMPLIED. . . . NO PERSON IS AUTHORIZED TO MAKE ANY OTHER GUARANTEES, WARRANTIES, OR REPRESENTATIONS ON BEHALF OF . . . ST. JUDE . . . .

(Eon Mini Charging System User's Guide at 16; Pl.'s Third Am. Compl., Ex. 18.) (emphasis in original).   These warranty representations specifically disclaim other warranties, including oral ones.   SJN never created an express warranty that "guaranteed" a ten-year battery life and, therefore, her breach of express warranty claim based upon a ten-year battery life estimate fails to plausibly assert facts that state a claim upon which relief can be granted.

> **2.    The Breach of Express Warranty claim based on the ten-year battery life estimate is expressly preempted because it relates to the IPG's "safety and effectiveness" as labeled.**

Express preemption also bars Plaintiff's breach of express warranty claim that is based upon the ten-year battery life estimate.  (Pl.'s Third Am. Compl. ¶¶

89, 91, 93-94, 98.)  Plaintiff conveniently ignores the fact that the FDA granted supplemental PMA approval for a ten-year battery life estimate.[29,30]  In doing so, the FDA conclusively determined that the device as labeled was "safe and effective."  Even if one assumes that SJN "guaranteed" a ten-year battery life in the device labeling, a breach of express warranty claim second guesses the FDA's determination that the IPG was also "safe and effective" as labeled.  Therefore, this breach of express warranty claim imposes liability under state law when it is undisputed that SJN complied with the FDA's labeling requirements.

These are the standard types of breach of express warranty claims that other courts have routinely ruled were expressly preempted, that is, when the FDA has already approved the labeling, as it has here.  "Plaintiff's breach of express warranty claim is preempted to the extent that it is premised on FDA approved representations made by the manufacturer."  *Horowitz*, 613 F. Supp. 2d at 285; *Desabio v. Howmedica Osteonics Corp.*, 817 F. Supp. 2d 197, 206 (W.D.N.Y. 2011).  "[I]f these [express] warranties were made in materials approved by the FDA in the premarket approval process, then allowing a claim to proceed under

---

[29]  A copy of PMA Supplement S019 is available in the public record at: http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=1182

[30] The Spinal Cord Stimulator at issue in *Horn,* which has been previously cited by Plaintiff, never received any premarket approval or supplemental approval to claim a ten-year battery life.  This is confirmed by the device's PMA approval: http://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpma/pma.cfm?id=17030

Georgia law would subject defendant to state duties above and beyond the federal requirements." *Haynes*, 2011 WL 3903238 at *8.  Thus, the breach of express warranty claim for the ten-year battery life estimate is expressly preempted.

### 3. SJN never breached the Limited Warranty and, therefore, Plaintiff fails to state a claim under Georgia law.

Aside from the issue of whether a "voluntary contractual promise" escapes preemption, the breach of express warranty claim based upon the Limited Warranty fails to state a claim under Georgia law.  Plaintiff tacitly acknowledges that SJN honored its Limited Warranty by replacing the subject IPG for free.  (Pl.'s Am. Compl. ¶ 97, Ex. 19.)[31]  The well-settled law in Georgia is that a product defect does not create the breach of warranty.  "[T]he warranty is not instantly breached if the [product] is found . . . to have a defective part or operational deficiency . . . . [I]t is the refusal to remedy within a reasonable time, or a lack of success in the attempts to remedy which would constitute a breach of warranty." *Ford Motor Co. v. Gunn*, 123 Ga. App. 550, 551, 181 S.E.2d 694, 696 (1971). Plaintiff admits in her own pleadings that SJN replaced the IPG and, thus, no breach occurred.  Plaintiff's breach of express warranty based on the Limited

---

[31] Plaintiff never alleges that the replacement was untimely.

Warranty cannot prevail for failure to state a claim under Georgia law.[32]

### III.   <u>CONCLUSION</u>

WHEREFORE, SJN shows this Court that Plaintiff has been provided an adequate opportunity to investigate the existence of a parallel claim.  Despite this investigation, Plaintiff still fails to set forth any cause of action that escapes express and implied preemption or is otherwise viable under Georgia law. Therefore, this Court should bring Plaintiff's efforts to manufacture a parallel claim to an end and allow the rule of law to prevail by dismissing, without further delay, all of Plaintiff's claims with prejudice.

This 18th day of April, 2013

<div style="margin-left:50%">

s/ Moses Kim
MOSES KIM
Georgia Bar No. 335581
KEVIN SPAINHOUR
Georgia Bar No. 424508

Counsel for Defendant Advanced Neuromodulation Systems, Inc., d/b/a St. Jude Medical Neuromodulation Division

</div>

---

[32] Because no breach has occurred under Georgia law, it is not necessary for this Court to decide whether the Limited Warranty for replacement is prima facie unconscionable. *See* O.C.G.A. § 11-2-719(3).  Additionally, it is not necessary for this Court to decide whether a contract claim permits tort damages such as pain and suffering.

INSLEY & RACE, LLC
The Mayfair Royal
181 14th Street, NE, Suite 200
Atlanta, GA 30309
Telephone: (404) 876-9818
Fax: (404) 876-9817
mkim@insleyrace.com
kspainhour@insleyrace.com

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that I have electronically filed this DEFENDANT ADVANCED NEUROMODULATION SYSTEMS, INC., d/b/a ST. JUDE MEDICAL NEUROMODULATION DIVISION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S THIRD AMENDED COMPLAINT WITH PREJUDICE with the Clerk of Court using the CM/ECF system, which automatically provides email notification of the filing to the following attorney of record:

> **<u>Counsel for Plaintiff</u>**
> William C. Lanham, Esq.
> Clark H. McGehee, Esq.
> LANHAM & MCGEHEE, PC
> 2100 The Equitable Building
> 100 Peachtree Street NW
> Atlanta, GA 30303

I FURTHER CERTIFY that the undersigned responsible for service of the above document acknowledges that I am in possession of the original of the foregoing and the custodian thereof, the same to be held in accordance with the local rule.

This 18th day of April, 2013

s/ Moses Kim
MOSES KIM
Georgia Bar No. 335581
KEVIN SPAINHOUR
Georgia Bar No. 424508

Counsel for Defendant Advanced Neuromodulation Systems, Inc., d/b/a St. Jude Medical Neuromodulation Division

INSLEY & RACE, LLC
The Mayfair Royal
181 14th Street, NE, Suite 200
Atlanta, GA 30309
Telephone: (404) 876-9818
Fax: (404) 876-9817
mkim@insleyrace.com
kspainhour@insleyrace.com

## <u>CERTIFICATE OF FONT SIZE</u>

I hereby certify this document was prepared in Times New Roman 14 pt. in accordance with Local Rule 5.1B.

This 18th day of April, 2013.

<div align="right">

s/ Moses Kim
MOSES KIM
Georgia Bar No. 335581
KEVIN SPAINHOUR
Georgia Bar No. 424508

Counsel for Defendant Advanced Neuromodulation Systems, Inc., d/b/a St. Jude Medical Neuromodulation Division

</div>

INSLEY & RACE, LLC
The Mayfair Royal
181 14th Street, NE, Suite 200
Atlanta, GA 30309
Telephone: (404) 876-9818
Fax: (404) 876-9817
mkim@insleyrace.com
kspainhour@insleyrace.com